IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ALFREDO TORRES, Jr.,

    Plaintiff,

v.

A. LOPEZ, et al.,

    Defendants.

No. C 10-03044 SBA (PR)

**ORDER OF SERVICE**

## INTRODUCTION

Plaintiff, a state prisoner, has filed a pro se civil rights action pursuant to 42 U.S.C. § 1983 challenging his placement and retention in administrative segregation (ad-seg) on the basis of association with a prison gang.

His motion for leave to proceed in forma pauperis has been granted.

Venue is proper because the events giving rise to the claim are alleged to have occurred at San Quentin State Prison (SQSP), which is located in this judicial district. See 28 U.S.C. § 1391(b).

In his complaint, Plaintiff names the following Defendants: SQSP Correctional Officers A. Lopez and D. Deseo; SQSP Sergeant J. R. Martinez; and SQSP Captain D. Hurley. Plaintiff seeks declaratory and injunctive relief.

## DISCUSSION

### I.  Standard of Review

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. Id. § 1915A(b)(1), (2). Pro se pleadings must be liberally construed. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the

alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).

**II.     Due Process Claim**

The Due Process Clause of the Fourteenth Amendment protects individuals against governmental deprivations of "life, liberty or property," as those words have been interpreted and given meaning over the life of our republic, without due process of law. Board of Regents v. Roth, 408 U.S. 564, 570-71 (1972); Mullins v. Oregon, 57 F.3d 789, 795 (9th Cir. 1995).

The touchstone of due process is protection of the individual against arbitrary action of government, whether the fault lies in a denial of fundamental procedural fairness (i.e., denial of procedural due process guarantees) or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective (i.e., denial of substantive due process guarantees). See County of Sacramento v. Lewis, 523 U.S. 833, 845-46 (1998).

Interests that are procedurally protected by the Due Process Clause may arise from two sources -- the Due Process Clause itself and the laws of the states. See Meachum v. Fano, 427 U.S. 215, 223-27 (1976). Although the hardship associated with administrative segregation is not so severe as to violate the Due Process Clause itself, see Toussaint v. McCarthy, 801 F.2d 1080, 1091-92 (9th Cir. 1986), changes in conditions of confinement may amount to a deprivation of a state-created and constitutionally protected liberty interest, provided the liberty interest in question is one of "real substance," see Sandin v. Conner, 515 U.S. 472, 477, 484-87 (1995), and, in particular, where the restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," see id. at 484. Indefinite placement in the SHU may amount to a deprivation of a liberty interest of real substance within the meaning of Sandin, i.e., an "atypical and significant hardship." See Wilkinson v. Austin, 125 S. Ct. 2384, 2394-95 (2005).

When prison officials determine that a prisoner is to be segregated for administrative reasons and a liberty interest of real substance is implicated, due process requires that such officials hold an informal nonadversary hearing within a reasonable time after the prisoner is segregated, inform the prisoner of the charges against him or the reasons segregation is being considered, and allow the prisoner to present his views. See Toussaint, 801 F.2d at 1100; see also Wilkinson, 125 S. Ct. at

2397 (determining prisoner constitutionally entitled only to informal, non-adversary procedures prior to assignment to "supermax" facility).

Due process also requires that an evidentiary basis exist for a prison official's decision to place an inmate in segregation for administrative reasons. See Superintendent v. Hill, 472 U.S. 445, 455 (1985); Toussaint, 801 F.2d at 1104-05. This standard is met if there is "some evidence" from which the conclusion of the administrative tribunal can be deduced. Id. at 1105. Additionally, it has been held that the evidence relied upon to confine an inmate to the SHU for gang affiliation must have "some indicia of reliability" to satisfy due process requirements. See Madrid v. Gomez, 889 F. Supp. 1146, 1273-74 (N.D. Cal. 1995); Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987) (holding evidence relied upon by prison disciplinary board must have "some indicia of reliability"). Finally, prison officials must engage in some sort of periodic review of an inmate's confinement in administrative segregation, see Hewitt v. Helms, 459 U.S. 460, 477 n.9 (1983); Toussaint, 801 F.2d at 1101, which review must amount to more than "meaningless gestures," Toussaint v. Rowland, 711 F. Supp. 536, 540 n.11 (N.D. Cal. 1989) (citing Toussaint, 801 F.2d at 1102).

Here, Plaintiff alleges that the evidence relied upon by Defendants in determining that he should be placed in administrative segregation (ad-seg) was neither sufficient nor reliable. Plaintiff claims he was improperly validated in 1999 based on information from a confidential informant, an "address of [his] cousin, thru [sic] marriage, as a 'direct link,'" and a "photo copy of a drawing with a 'huelga bird.'"[1] (Compl., Attach. at 3.)

Plaintiff alleges he "walk[ed] up to [Defendant] Lopez and told him that [he] no longer wanted to be around active [H]ispanic [inmates], because [he] was now a Christian man and not an active inmate." (Id. at 2.) He claims Defendant Lopez then placed him in ad-seg and mis-quoted Plaintiff in justifying the ad-seg placement in the "lock-up order." (Id.) Plaintiff also alleges that Defendants Lopez, Martinez and Hurley "or whom ever wrote up that . . . order fabricated and falsified my statement." (Id.) Because of these false statements, Plaintiff refused to sign the "lock-

---

[1] The huelga bird is a symbol of both the United Farm Workers of America and the Norteños gang.

3

up order." (Id.)

Plaintiff claims the Classification Committee who initially reviewed his placement "did not want to hear anything that [he] had to say." (Id.) Additionally, Plaintiff alleges that he has "tried everything [he could] to file a [602] appeal here at San Quentin State Prison on this unlawful gang validation," without success. (Id. at 3.) Plaintiff alleges he has requested prison officials to give him a copy of the "unlawful" gang validation chronos against him to no avail. He asks the Court to "please look into this matter of C.D.C.R. not giving [him his] validation chronos or acknowledging [his] 602 appeal." (Id.)

Plaintiff claims Defendant Deseo was eventually assigned to his "case" in order to interview him regarding his appeal. (Id. at 5.) Plaintiff states: "At no time did [Defendant] Deseo interview me about the evidence being used against me or did [Defendant] Deseo give me the opportunity to refute the evidence being used against me." (Id.)

In sum, Plaintiff argues that no evidentiary basis existed for Defendants' decision to place Plaintiff in ad-seg. See Toussaint, 801 F.2d at 1104-05. He alleges that Defendants Lopez, Deseo, Martinez and Hurley were responsible for these violations insofar as they participated in the decisions to place him in ad-seg. Liberally construed, such allegations state a cognizable due process claim against these Defendants.

## CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. Plaintiff states a COGNIZABLE due process claim against Defendants Lopez, Deseo, Martinez and Hurley.

2. The Clerk of the Court shall mail a Notice of Lawsuit and Request for Waiver of Service of Summons, two copies of the Waiver of Service of Summons, a copy of the complaint and all attachments thereto (docket no. 1) and a copy of this Order to **SQSP Correctional Officers A. Lopez and D. Deseo; SQSP Sergeant J. R. Martinez; and SQSP Captain D. Hurley at SQSP**. The Clerk of the Court shall also mail a copy of the complaint and a copy of this Order to the State Attorney General's Office in San Francisco. Additionally, the Clerk shall mail a copy of this Order to Plaintiff.

4

3. Defendants are cautioned that Rule 4 of the Federal Rules of Civil Procedure requires them to cooperate in saving unnecessary costs of service of the summons and complaint. Pursuant to Rule 4, if Defendants, after being notified of this action and asked by the Court, on behalf of Plaintiff, to waive service of the summons, fail to do so, they will be required to bear the cost of such service unless good cause be shown for their failure to sign and return the waiver form. If service is waived, this action will proceed as if Defendants had been served on the date that the waiver is filed, except that pursuant to Rule 12(a)(1)(B), Defendants will not be required to serve and file an answer before **sixty (60) days** from the date on which the request for waiver was sent. (This allows a longer time to respond than would be required if formal service of summons is necessary.) Defendants are asked to read the statement set forth at the foot of the waiver form that more completely describes the duties of the parties with regard to waiver of service of the summons. If service is waived after the date provided in the Notice but before Defendants have been personally served, the Answer shall be due **sixty (60) days** from the date on which the request for waiver was sent or **twenty (20) days** from the date the waiver form is filed, whichever is later.

4. Defendants shall answer the complaint in accordance with the Federal Rules of Civil Procedure. The following briefing schedule shall govern dispositive motions in this action:

   a. No later than **ninety (90) days** from the date their answer is due, Defendants shall file a motion for summary judgment or other dispositive motion. The motion shall be supported by adequate factual documentation and shall conform in all respects to Federal Rule of Civil Procedure 56. If Defendants are of the opinion that this case cannot be resolved by summary judgment, they shall so inform the Court prior to the date the summary judgment motion is due. All papers filed with the Court shall be promptly served on Plaintiff.

   b. Plaintiff's opposition to the dispositive motion shall be filed with the Court and served on Defendants no later than **sixty (60) days** after the date on which Defendants' motion is filed. The Ninth Circuit has held that the following notice should be given to pro se plaintiffs facing a summary judgment motion:

   > The defendant has made a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.

>Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted [in favor of the defendants], your case will be dismissed and there will be no trial.

See Rand v. Rowland, 154 F.3d 952, 962-63 (9th Cir. 1998) (en banc).

Plaintiff is advised to read Rule 56 of the Federal Rules of Civil Procedure and Celotex Corp. v. Catrett, 477 U.S. 317 (1986) (party opposing summary judgment must come forward with evidence showing triable issues of material fact on every essential element of his claim). Plaintiff is cautioned that because he bears the burden of proving his allegations in this case, he must be prepared to produce evidence in support of those allegations when he files his opposition to Defendants' dispositive motion. Such evidence may include sworn declarations from himself and other witnesses to the incident, and copies of documents authenticated by sworn declaration. Plaintiff will not be able to avoid summary judgment simply by repeating the allegations of his complaint.

   c. If Defendants wish to file a reply brief, they shall do so no later than **thirty (30) days** after the date Plaintiff's opposition is filed.

   d. The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the Court so orders at a later date.

  5. Discovery may be taken in this action in accordance with the Federal Rules of Civil Procedure. Leave of the Court pursuant to Rule 30(a)(2) is hereby granted to Defendants to depose Plaintiff and any other necessary witnesses confined in prison.

  6. All communications by Plaintiff with the Court must be served on Defendants, or Defendants' counsel once counsel has been designated, by mailing a true copy of the document to Defendants or Defendants' counsel.

1    7.    It is Plaintiff's responsibility to prosecute this case.  Plaintiff must keep the Court
2 informed of any change of address and must comply with the Court's orders in a timely fashion.
3    8.    Extensions of time are not favored, though reasonable extensions will be granted.
4 Any motion for an extension of time must be filed no later than **fifteen (15) days** prior to the
5 deadline sought to be extended.
6    IT IS SO ORDERED.

7 DATED:  5/24/11                                     *Saundra B Armstrong*
8                                                                   SAUNDRA BROWN ARMSTRONG
                                                                      United States District Judge

**United States District Court**
For the Northern District of California

1  UNITED STATES DISTRICT COURT
   FOR THE
2  NORTHERN DISTRICT OF CALIFORNIA

3
4  ALFREDO TORRES JR.,                    Case Number: CV10-03044 SBA
              Plaintiff,
5                                         **CERTIFICATE OF SERVICE**
       v.
6
7  A. LOPEZ et al,
              Defendant.
8                                      /

9
   I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District
10 Court, Northern District of California.

11 That on May 25, 2011, I SERVED a true and correct copy(ies) of the attached, by placing said
   copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said
12 envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle
   located in the Clerk's office.
13
14
15 Alfredo Torres G-41302
   959 Gemini Drive
16 Windsor, CA 95492

17 Dated: May 25, 2011
                                          Richard W. Wieking, Clerk
18                                        By: LISA R CLARK, Deputy Clerk

19
20
21
22
23
24
25
26
27
28

G:\PRO-SE\SBA\CR.10\Torres3044.service.wpd 8